# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **In re**<br><br>**IVANA MACHADO,**<br><br>                    **Debtor** | **Chapter 13**<br>**Case No. 06-13013-RS** |

## MEMORANDUM AND ORDER

The Debtor has proposed a plan that (a) discriminates in favor of nondischargeable student loan debt and against other nonpriority unsecured debt and (b) excludes certain cure-and-maintain payments on long-term unsecured debt from the Chapter 13 trustee's statutory compensation ("Plan").  The trustee objects to both provisions of the Plan ("Objection").  For the reasons and to the extent set forth below, the Court finds no unfair discrimination and no fault in the Debtor's payment of maintenance payments directly to the creditors, instead of through the trustee, but the Court sustains the Objection because the plan fails to channel cure payments through the Chapter 13 trustee and to provide for payment of the trustee's fee on such cure payments.

## Plan

The Debtor's non-priority unsecured debt amounts to $48,034 comprised of $21,084 in non-dischargeable student loan claims and $26,950 in other unsecured claims. The Debtor also has $12,000 in tax priority debt and $1,800 in administrative expense priority debt.

The Plan has a sixty-month term.[1] The Plan provides so-called "cure and maintain"

treatment of the Debtor's student loan debt, directly paying $250 per month for sixty months to

the student loan lenders.[2] Under this treatment, the student loan debt would not be fully paid

through or during the term of the Plan.  By contrast, the Plan provides for a *pro rata* distribution

on account of the Debtor's other  unsecured debt, paying through the Chapter 13 trustee $276.20

per month for sixty months, resulting in a 4.14% dividend during the Plan term with the balance

discharged upon Plan completion. Lastly, the Plan excludes the payments made by the Debtor

directly to the student loan lenders from the percentage fee component of the trustee's statutory

compensation.


### The Positions of the Parties

The trustee contends that there is no basis for the separate classification and different

treatment of the student loan debt and the other unsecured debt; that the differential between the

payment of the former and the 4.14% dividend for the latter constitutes unfair discrimination;

and that the student loan debt should be paid through her (and not "outside the plan"), thus

subjecting those payments to her statutory percentage fee.

The Debtor responds that long-term debt may be treated differently than short-term debt

in a plan; that maximizing debt reduction is a legitimate bankruptcy goal, reinforcing her fresh

start; that, absent the different treatment of unsecured debt, she would face many years of

---

[1]  Though a below-median income debtor with an applicable commitment period of
thirty-six months, the Debtor proposes a longer term for the Plan, primarily to permit full
payment of the tax priority claim. See 11 U.S.C. §1325(b)(4)(A)(i).

[2]  The record does not reflect the cure amount or the allocation of the $250 between cure
payments and maintenance payments. Any dispute regarding the amount or allocation would be
subject to further process herein.

interest accruals and default on her student loan debt, undermining that fresh start; that she is

dedicating to the Plan five years' disposable income not three years' as she might otherwise do,

reflecting her good faith in proposing the Plan; that the Plan increases the prospect of full

payment of her non-dischargeable student loan debt, thereby furthering an identified legislative

goal; and that direct payments to creditors are permitted under a plan and, if permitted, are

properly excluded from trustee's percentage fee compensation.


## **Unfair Discrimination**

The resolution of the discrimination dispute implicates two provisions of the Bankruptcy

Code: *first*, the provision that permits separate classification and treatment of unsecured claims

so long as there is no unfair discrimination against any class[3]; and *second,* the provision that

permits cure and maintain treatment of secured and unsecured long-term debt.[4]  It is clear that

the Debtor may employ cure and maintain treatment under Section 1322(b)(5) for the her student

loan debt given the occurrence of prepetition defaults and original loan maturity dates after the

final Plan payment date.  *See* 8 Collier on Bankruptcy ¶1322.09[2] (15th ed. rev.).  *See also In re

Saulter,* 133 B.R. 148 (Bankr. W.D. Mo. 1991).  Nonetheless, the treatment of student loan debt

under Section 1322(b)(5) must not discriminate unfairly as against the Debtor's other unsecured

debt.  *See In re Chandler,* 210 B.R. 898, 901 (Bankr. D. N.H. 1997); *In re Coonce,* 213 B.R.

---

[3]  "[T]he plan may . . . designate a class or classes of unsecured claims...but may not *discriminate unfairly* against any class so designated[.]"  11 U.S.C. §1322(b)(1) (emphasis added).

[4]  "[T]he plan may . . . provide for the curing of any default *within a reasonable time* and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]" 11 U.S.C. §1322(b)(5) (emphasis added).

344, 347 (Bankr. S.D. Ill. 1997).  In determining whether any such discrimination is fair or not, courts consider various factors, applied to the circumstances of each particular case.  These factors are variously formulated but bear upon the equitable allocation of plan resources and the furtherance of underlying policy objectives.  *See In re Thibodeau*, 248 B.R. 699 (Bankr. D. Mass. 2000); *In re Bentley*, 266 B.R. 229 (1st Cir. BAP 2001).

Four considerations inform my decision in this matter.  *First*, Congress, by its exception of student loan obligations from discharge, has long made clear the legislative objective of student loan repayment.  The Plan treatment of the Debtor's student loan debt furthers the goal by routing Plan resources toward such repayment in accordance with the stated Code provisions.

*Second*, for debts whose terms extend beyond the period of a chapter 13 plan—often including, precisely because of their nondischargeability, student loan obligations—Congress has further expressly permitted a debtor to elect to cure and maintain that debt.  Here, the Debtor has elected this option, which channels only so much money to the student loan creditors as is necessary to cure the prepetition arrearage and ensure that she will not emerge from bankruptcy in arrears on these obligations.  If she were to forego this option and pay an equal percentage to both student loan creditors and other nonpriority unsecured creditors, she would emerge from bankruptcy more deeply in arrears than she went into bankruptcy, a result that cannot be fair to her or consistent with the evident intent behind sections 523(a)(8) and 1322 (b)(5).

*Third*, the financial differential resulting from the proposed discrimination is modest.  The Debtor's applicable commitment period (and thus plan term) is thirty-six months.  If she dedicated the combined $276.20 and $250 to the *entire* $43,084 pool of unsecured debt (as advocated by the trustee) for that period, the dividend on *all* unsecured claims would be 6.76%, or approximately $700 more than the 4.14% provided in the Plan for the non-student loan claims.

4

I find no unfairness in this differential warranting denial of Plan confirmation.

*Fourth*, perhaps reflective of that modest differential, no holder of a non-student loan unsecured claim has objected to the treatment of such claims under the Plan.

Taking into account the identified policy considerations, the available resources, the foregoing allocation among the plan constituencies, and the absence of objection by any affected creditor, I find that, in the circumstances of this case, the proposed discrimination as against non-student loan claims is fair.

### Trustee's Percentage Fee

The resolution of the percentage fee dispute implicates several provisions of Title 11 (Bankruptcy Code) and related provisions of Title 28 (Judicial Code): *first*, the provision that requires the Debtor to remit her future earnings and income to the trustee for execution of the plan[5]; *second,* the provisions that fix the timing of plan payments from a debtor to the trustee[6] and from the trustee to creditors[7]; and *third,* the provisions that fix the timing of payment[8] and

---

[5]  "[T]he plan shall . . . provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee *as is necessary for the execution of the plan*[.]"  11 U.S.C. §1322(a)(1) (emphasis added).

[6]  *"Unless the court orders otherwise,* the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount . . . proposed by the plan to the trustee[.]"  11 U.S.C. §1326(a)(1) (emphasis added).

[7]  "If a plan is confirmed, the trustee shall distribute [plan payments] in accordance with the plan as soon as practicable."  11 U.S.C. §1326(a)(2).

*"Except as otherwise provided in the plan or in the order confirming the plan,* the trustee shall make payments to creditors under the plan."  11 U.S.C. §1326(c) (emphasis added).

[8]  "Before or at the time of each payment to creditors under the plan, there shall be paid . . . if a standing trustee is serving . . . the percentage fee fixed for such standing trustee under

the calculation[9] of the trustee's percentage fee compensation.

These provisions make clear that plan payments through the trustee are the norm; that such plan payments through the trustee are subject to the trustee's percentage fee; that, notwithstanding the norm, plan payments directly to a creditor are permissible; and that, if such direct-to-creditor plan payments are permitted, they are not subject to the trustee's percentage fee.[10]

The question then becomes whether plan payments directly to creditors should be permitted in the circumstances of this case. On the answer to that question will turn the question whether the trustee's percentage fee applies.

Here, the plan proposes cure and maintain treatment for the class of non-dischargeable student loan debt, effectuating that treatment by curing prepetition defaults, thus reinstating original loan terms, and by resuming contract payments during the case, with such cure and maintenance payments made directly to creditors. The former payments are modified by the Plan in that the Debtor is permitted to cure such payment defaults within a reasonable time,

---

section 586(e)(1)(B) of title 28[.]"  11 U.S.C. §1326(b)(2).

[9] "The Attorney General...shall fix [for the standing trustee] a percentage fee not to exceed...ten percent..." 28 U.S.C. §586(e)(1)(B).

"[The standing trustee] shall collect such percentage fee from all payments received by such [standing trustee] under plans in cases under chapter 12 or 13 of title 11 for which such [standing trustee] serves[.]" 28 U.S.C. §586(e)(2).

[10] I am mindful that Judge Kenner determined, in *In re Harris,* 200 B.R. 745 (Bankr. D. Mass. 1996), that, where payments under a plan on a bifurcated secured claim were to be made from future earnings or income of the debtor, such payments (both unsecured and secured) must be made through the trustee.  Here, the student loan claims are neither bifurcated nor secured. Moreover, as Judge Kenner observed, considering Section 1126(c):  "the Code clearly contemplates that, in some circumstances, the debtor may make his or her plan payments directly to creditors."  *Harris,* 200 at 748.  I find such circumstances in this case and do not consider that decision as contrary to *Harris.*

reinstating the debt to its pre-default status. The latter payments are not modified by the Plan in

that the Debtor will simply resume, and continue to make, payments in accordance with the

reinstated contract terms.  I find that distinction—between payment defaults modified by the

Plan and maintenance payments not modified but rather resumed—a basis for determining

whether payment should be made directly to creditors by the Debtor or by the Debtor through the

trustee. *See* 8 Collier on Bankruptcy ¶ 1322.09[4] (15th ed. rev.).  More particularly, I further find

that, in the circumstances of this case, the cure component of the cure and maintain treatment is

properly made through the trustee (and such cure payments are subject to the trustee's

percentage fee), and that the maintenance component of the cure and maintain treatment is

permissibly made directly to creditors (and such maintenance payments are *not* subject to the

calculation of the trustee's percentage fee).  *See In re Lopez,* 373 B.R. 40 (9th Cir. BAP 2007)

(debtor may act as disbursing agent for maintenance payments on long-term debt).


## Conclusion

The Court finds that the discrimination in the Plan against the class of non-student loan

claims does not constitute an unfair discrimination warranting denial of confirmation; that the

cure payments on student loan claims under the Plan must be made through the trustee and are

thus subject to the trustee's percentage fee; and that the maintenance payments on student loan

claims under the Plan  may be made directly to the student loan lenders and, if so made, are thus

not subject to the trustee's percentage fee. Since the Plan does not fully meet those criteria, it

cannot be confirmed.

## **Order**

For the foregoing reasons, the Objection is hereby sustained.  The Debtor shall file any

amended plan by November 30, 2007.


Date:  November 6, 2007

_____
Robert Somma
United States Bankruptcy Judge